ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

HENRY VAN GIESEN, surviving executor of the will of
Henry White, deceased,

*v.*

CHARLOTTE GOODMAN WHITE et al.

By his will H. gave the use of his estate to his wife for life, and added: "I
give and devise all the residue of my estate, after the decease of my said wife,
and the payment of her debts and funeral expenses, to my son William,.
\* \* \* or in case of his decease, before he shall come into possession of the
same, then to his children lawfully begotten in wedlock, if any survive him.
\* \* \* In case of the death of my said son William, leaving no children or
other lineal descendants to inherit the said property, then I do hereby author-

ize and direct my executors to sell" &c., and pay the proceeds to a society for the poor &c. William survived the testator but died before the testator's widow, leaving a lawful child, W. H., who, surviving his father five years, also died before the testator's widow.—*Held*, that at the death of William the residue of the estate vested in W. H. in fee.

On bill for instruction to executor, answers and proofs.

William White died in 1866, seized of real estate situate in the city of Paterson. The portions of his will which are pertinent to the questions now presented are in this language:

"*Second.* It is my will and I do direct that my beloved wife, Maria, shall use, occupy, possess and enjoy all the residue of my estate both real and personal whatsoever and wheresoever during her natural life.

"*Third.* I give and devise all the residue of my estate, after the decease of my said wife and the payment of her debts and funeral expenses, to my son William now residing at Manchester in England, or in case of his death before he shall come into possession of the same, then to his children lawfully begotten in wedlock, if any survive him.

"*Fourth.* I do hereby request and direct my executors, herein named, as soon as may be after the decease of my said wife, to notify my son aforesaid or his legal representatives of the same, giving him or them as particular account as practicable of the nature and amount of property remaining.

"*Fifth.* In case of the death of my said son leaving child or children, minors, it is my will that the said property remain under the control of my executors until all such children shall arrive at twenty-one years of age, said executors to keep the same and the income thereof safely and productively invested for the benefit of said children share and share alike when they become of age.

"*Sixth.* In case of the death of my said son, William, leaving no children or other lineal descendants to inherit the said property, then I do hereby authorize and direct my executors, after the decease of my wife, to sell to the best advantage all my real estate and to execute good and sufficient conveyances for the same and to pay over the proceeds thereof together with all the residue of my personal property then remaining in their hands to the trustees of the First Presbyterian Society of Paterson to be by said trustees invested as a permanent fund for the relief of the poor of said Society and the interest of which shall be annually paid by said trustees to the Minister and Elders of said Society and by said Minister and Elders distributed in food, fuel and clothing at their discretion among the poor of said Society."

The testator's widow died shortly before this suit was commenced. Her debts and funeral expenses have been paid from the personal estate of her husband, and that estate is exhausted.

The testator's son, William, died in May, 1868, leaving him surviving one child, William Henry White, who was a son "lawfully begotten in wedlock." That son died in 1873, unmarried and intestate, but leaving him surviving his mother and some collateral kindred, who are his heirs-at-law.

The complainant brings this suit in order that he may know whether the duty of selling the testator's real estate, in accordance with the direction of the sixth paragraph of the will, now devolves upon him.

All known heirs-at-law of William White and William Henry White, including the mother of the latter, Charlotte Goodman White, and also the unknown heirs-at-law of William Henry White and, as well, the trustees of the First Presbyterian Society of Paterson, are made parties defendant.

*Mr. William Pennington,* for the complainant.

*Mr. John W. Griggs* and *Mr. William Nelson,* for the trustees of the First Presbyterian Society &c.

*Mr. John S. Barkalow,* for Charlotte Goodman White and Thomas White Taylor.

The Chancellor.

The trustees of the First Presbyterian Society of Paterson insist that the complainant shall sell the real estate of which Henry White died seized, under the requirement of the sixth paragraph of his will, and, on the other hand, the defendants, Charlotte Goodman White and Thomas White Taylor, claim that, under the will, William Henry White, of whom they are heirs-at-law, took the real estate in fee. In view of these conflicting claims, and the duties imposed upon the complainant by the will, I think he was justified in bringing this suit.

In order that he may be properly instructed, it will be necessary to examine and construe portions of the will of Henry White.

It is not questioned that the testator gave his widow a life estate in his realty. The remainder, given to his son, was contingent upon the failure of the son to come into possession. If that contingency should happen, his children, born in lawful wedlock, if they should survive him, were to take. William died before the testator's widow, and therefore did not come into the possession of the property. His son, William Henry White, survived him some five years, but also died before he came into possession of the property. It is not insisted that the requisite to his father's taking, namely, living till he should come into possession, is, by any implication, engrafted upon the devise to William Henry. It is admitted that the contrary is the settled doctrine in this state. *Acken* v. *Osborn, 18 Stew. Eq. 377; S. C. on appeal, 1 Dick. Ch. Rep. 607; Crane* v. *Bolles, 4 Dick. Ch. Rep. 373.*

The trustees of the First Presbyterian Society rest their claim upon the insistment that it was the intention of the testator to limit the devolution of title in his property to his direct heirs, and, in the case of the failure of such heirs, to have it sold for the benefit of the society. The argument is that such intention is sufficiently manifested by the testator's express limitation of the remainder to William's children " lawfully begotten in wedlock," and by the condition upon which the society is to take, which is the death of William, " leaving no children or other lineal descendants to inherit the said property." The insistment can derive little support from the first of these clauses taken by itself, for the manifest purpose of that clause was to limit the devolution of title to legitimate children of the testator's son and exclude illegitimate children, not for the benefit of lineal descendants, but impliedly to prefer lawful kindred, even though collateral. The more serious consideration is presented by the second clause, especially when it is taken in connection with the clause just commented upon. It manifests a preference for the Presbyterian society over collateral kindred. If William should die leaving no children—impliedly children of the character previously referred to, " begotten in lawful wedlock," or other lineal descendants, the issue of children—the property

shall go to the society. I think that the desire to limit the devolution to lineal descendants, thus exhibited, is clear. But testamentary intent is the purpose to render effective the testator's preference or desire and consists of something more than the mere desire. The testator's preference of the Presbyterian society over his collateral kindred, though apparent, is not alone sufficient to give direction to the property. It must be supported by the appearance of a purpose that the preference shall have effect. Does such purpose appear? The testator provided that if William should die before coming into possession, his lawful children should take in his stead, and if he should die without leaving such children, or the issue of deceased children, before coming into possession, the property, at the expiration of the life estate, should be sold by the executors for the benefit of the society. However strong his desire may have been to prefer the church to collateral kindred, he did not attempt to provide for the execution of that desire beyond the time when his son should die prior to his coming into possession. He meant that if his son should come into possession he would take a fee even though immediately thereafter he should die without lawful issue, and, if the son should die before coming into possession, that the son's lawful children should, at the son's death, take the fee whatever future events might be. But if, at the time of the son's death, there should be no children of the son or their issue, then the right of the society would attach subject to the life estate. Each contemplated contingency was to hinge upon the death of William and relate to that time. No attempt was made to control the estate after that event. The testamentary purpose, with reference to the estate, then ceased.

The real estate belongs to the heirs-at-law of William Henry White, and the complainant has no further duty to perform with reference to it.

By the fourth paragraph of the will, the testator imposed upon his executors the duty of notifying his son, or "the legal representatives" of the son, of the death of the testator's widow. At the widow's death the son was dead, and, in turn, his son was dead, and the performance of the prescribed duty of notifica-

tion involved the ascertainment of the heirs-at-law of the grandson, they being "the representatives" so far as real estate is concerned. Under instructions from this court the executor· performed that duty and necessarily expended in his inquiries,. in this country and in England, $242.10. The notice was' given through actual and constructive service of process in this suit.. The bill asks that the disbursement thus made may be charged' upon the real estate, there being no personalty. It is properly so chargeable, and the prayer in this respect will be granted. The parties to the suit will be allowed their costs, to be paid out of the real estate.